[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the Order and Decree of the Probate Court for the District of New Canaan, entered by the Honorable Gerald M. Fox, Jr., Acting Judge. Elizabeth Roles Taddei ("Appellant") seeks by the appeal to have this court declare that certain property should be added to the Estate of Robert G. Roles, Sr., deceased ("Decedent"), and other relief. The Appellant is asking, in effect, that certain loans and partnership distributions made to her brother Robert G. Roles, Jr., ("Respondent") by the Decedent, as well as certain loans by the Decedent to the partnership consisting of the Decedent and CT Page 9161 the Respondent, be taken into account before the estate is distributed equally to the Appellant and the Respondent as required by the terms of the Decedent's will.
The Decedent died testate on August 9, 1995 at the age of 87. He was a real estate developer, builder and real estate broker, and in 1968 formed a partnership with his son, the Respondent, to conduct such a business. Father and son eventually became 50% partners in this endeavor. Over many years, beginning in 1967 and continuing to 1992, the Decedent issued checks to the Respondent personally as well as to the partnership, on which checks the notation "loan" was made. The personal "loans" to the Respondent totaled $20,450 and to the partnership $28,200. In addition, checks were issued over the years from the partnership to the Decedent and the Respondent and noted as "capital draws".
The "capital draw" checks to the Decedent totaled $69,618 and those issued to the Respondent totaled $91,990, representing a difference in such distributions of $22,372. The Appellant wants the Respondent to pay back the sums that represent the personal loans, the loans to the partnership, and the difference in the capital draws, all with interest, amounting to approximately $143,000. It is for the court to determine what amounts, if any, should be added back to the estate before distribution is made to the beneficiaries, and in what manner any such distribution should be made. The court will address separately three categories of controversy: the personal loans, the partnership loans, and the excess in capital draws.
I. The Personal Loans.
In the twenty-some years between March 10, 1972 and June 20, 1992 the defendant issued seven checks to the Respondent in which the notation "loan" appears. The face amount of these checks totaled $20,450. The March 10, 1972 check, by far the largest in the amount of $10,350, was testified to by the Respondent as being in connection with the Respondent's first house built by him on speculation, and was to be repaid when the house sold. It took two years to sell the house, and the Respondent made $5,000 in the transaction. Although the notation "loan" appeared on the check, there was no promissory note signed by the Respondent, nor was there any agreement as to interest rate. As for the other six checks, there were no promissory notes, nor any agreement as to the maturity date or method of repayment, or interest rate. From 1972 to the time of the Decedent's death, in 1995, there was no CT Page 9162 demand made for repayment.
Respondent sets up special defenses to the Appellant's claim that the loans must be repaid to the estate before any distributions are made. He raises the defense of the statute of limitations and the defense of waiver.[1] He claims that the six year limitation of C.G.S. § 52-576 bars the 1972 loan, as well as two 1988 loans. However, Appellant asks the court to find that because this action is in the nature of a recoupment by the estate seeking to recoup monies from the Respondent's share of the estate, the statute of limitations does not apply, citing toJewett City Trust Co. v. Gray, 35 Conn. Sup. 508, 390 A.2d 948
(1977). In that case the defendant was permitted to assert recoupment by way of a counterclaim against the plaintiff who sued on a promissory note. The defendant sought, by way of recoupment, damages for the plaintiffs failure to adhere to the Truth-in-Lending Act in lending the money to the defendant. The court found that the damages to be recouped arose out of the same consumer loan transaction as set forth in the plaintiffs complaint, and thus the recoupment counterclaim was not barred by the statute of limitations. Here, the checks issued by the father to his son over the years has nothing to do with the Decedent's estate bequest to his son, and cannot be said to arise out of the same transaction. The Appellant's claim for repayment of the personal loans is thus subject to the statute of limitations.
The Appellant next claims that if a statute of limitations apply to her claims on the personal loans it should be that set forth in C.G.S. § 42a-3-118, i.e., ten years rather than the six year limitation of § 52-576. The fallacy in this claim is that §42a-3-118 governs negotiable instruments. The Appellant is not seeking to hold the Respondent liable on a negotiable instrument,[2] and therefore the statute of limitations on a simple contract, § 52-576, governs this matter.
Finally, the Appellant argues against the Respondent's statute of limitations defense by claiming that the statute was tolled by the Respondent's conduct in two respects. Respondent failed to list his father as a creditor in his 1991 bankruptcy intending, according to the Appellant, not to have his debts to his father discharged. There is no evidence that this was his intent at the time; his failure to set forth the loans is equally consistent with the Respondent believing that they were no loans at all, or that his father and he never treated them as loans, and therefore need not be discharged in bankruptcy. The Appellant CT Page 9163 also points to her testimony that in 1994, the Respondent told the Appellant that he owed money to his father and would repay it. The Respondent has no recollection of this conversation with his sister. The court finds that there is insufficient credible evidence there was an unequivocal acknowledgment or an unqualified recognition of the debt. See Wells v. Carson,140 Conn. 474, 476, 101 A.2d 297 (1953). The statute of limitations of six years cannot be held to have been tolled.
This brings us to the personal loans which were within the six year statute of limitations and the Respondent's next defense, waiver. This defense will be addressed together with the issues of the partnership loans and excess capital draws later in this decision.
II. The Partnership Loans.
Between December 29, 1967 and December 1, 1989 the Decedent issued 28 checks totaling $28,200 to the partnership consisting of himself and the Respondent. The smallest check was in the amount of $100 and the largest was $2,000. Each check contained the notation "loan" on its face. As with the personal loans, there were no promissory notes or any agreements as to the maturity date, method of repayment or interest rate with respect to any of the checks. The Respondent again raises the defenses of the statute of limitations and waiver. The Appellant responds to the statute of limitations defense with her argument on the theory of recoupment, as well as the extended statute of limitations claim under C.G.S. § 42a-3-118. Because the six year statute of limitations of C.G.S. § 52-576 applies, and because the court does not adopt the Appellant's theory of recoupment, all but two of the partnership loans are barred. Only the loan of October 4, 1989 in the amount of $1,000 and that of December 1, 1989 for $100 are within the six year statute, the Decedent having died on August 9, 1995.
III. Excess in Capital Draws.
Over a period of twenty-one years the Decedent issued checks drawn on the partnership to himself and to the Respondent, all of which were noted as "capital draw". Each check was signed by the Decedent and none by the Respondent. The amount of the checks issued to the Decedent totaled $69,618 and to the Respondent $91,990, representing a difference of $22,372, which the Appellant wants the Respondent to account for. CT Page 9164
To this claim, the Respondent asserts the defense of the statute of limitations, pointing to evidence that the partnership business was terminated in or around 1988-1989, and thus the six year statute of limitations within which the Decedent could have brought an action such as this expired prior to his death in 1995. The parties presented much evidence and argued extensively concerning whether the partnership had indeed terminated, or continued virtually to the day of the Decedent's death. The court need not decide this issue because the doctrine of waiver is dispositive of this case.
"Waiver involves an intentional relinquishment of a known right. . . . There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and intention to relinquish it . . . Inherent in the concept of waiver is the notion of assent, which is an act of understanding that presupposes that the party to be affected has knowledge of its rights but does not want to assert them. . . . Waiver may be inferred from the circumstances if it is reasonable to do so. . . . Whether conduct constitutes a waiver is a question of fact." (Citations omitted; internal quotation marks omitted) Fisette v.DiPietro, 28 Conn. App. 379, 385, 611 A.2d 417 (1992).
Under the totality of the circumstances revealed by the evidence in this case, the court is of the opinion that the Decedent waived his right to recover on the "loans" to his son and to their partnership, and also any right he may have had to an equalization of the capital draws made to himself and to the Respondent. Over the twenty-eight years, the Decedent never made an effort to collect on the loans or to equalize the draws. It must be considered that all the transactions in question took place in the context of a father/son relationship. There is no evidence that it was anything but a normal, healthy, loving relationship. The father advanced money to help his son built his first house as a building contractor, and gave him money when he was divorcing his wife. Indeed, there is little persuasive evidence that the checks were meant to evidence loans at all. Although a notation on each check reads "loan", there is no other documentary evidence in the form of a note or other written undertaking by the Respondent; there was no evidence of any agreement, written or oral, as to the time or method of repayment, or an interest rate. No one can know why such notation was made by the Decedent, when it was unaccompanied by any other evidence that it was intended to be a loan or that the Decedent CT Page 9165 ever intended to have the money repaid. The Appellant testified that in the late 1980's or early 1990's she asked the Decedent to help her brother who she felt was in dire financial straits, to which her father replied that the Respondent had "gotten a lot of money", and that he "owed [Decedent] a lot." That may well have been the Decedent's way of telling his daughter that he already had helped her brother; it is no indication that he expected repayment.
In any event, whether the checks were loans or not, they were never treated by the Decedent as loans and there was no evidence that he wished repayment. It is apparent to the court that the Decedent helped his son when he needed it, and never looked for aquid pro quo. The Decedent signed every partnership check. He well could have equalized the capital draws over the twenty-seven years to his death, or repaid the partnership loans, but he never did; nor did he ever give any indication in word or deed that he wished to.
Neither did the Decedent ever indicate, throughout the years, that he wished the Respondent not to share equally in his estate although he had opportunities to do so. On the contrary, in a note in his diary in 1990, he clearly expressed his intent that his lawyer "hold [his] will as is". Thus, there was never any change in his will from the time of the original 1969 codicil to his death in 1995.
In conclusion, the court finds that whether or not the monies in question were loans, they were never treated as such by the Decedent; that to the extent they were loans, the six year statute of limitations bars most of them; and that whether or not they are so barred, the doctrine of waiver precludes a recovery on them, as well as any adjustment to the assets of the estate for the loans or for the excess capital draws. The court reasonably infers from all the circumstances that the Decedent had knowledge of his rights, clearly did not want to assert them, and intentionally relinquished them. See Fisette v. DiPietro, supra, 28 Conn. App. 385.
The Appellant's appeal is dismissed.
So Ordered.
D'ANDREA, J. CT Page 9166